[Civ. No. 11910.   First Dist., Div. One.   Jan. 2, 1942.]

OLIVER CONTINUOUS FILTER COMPANY (a Corporation), Appellant, v. CHARLES J. McCOLGAN, as Franchise Tax Commissioner, etc., Respondent.

Jones & Dall for Appellant.

Earl Warren, Attorney General, and H. H. Linney, James J. Arditto and Valentine Brookes, Deputies Attorney General, for Respondent.

WARD, J.—Plaintiff prosecutes this appeal from a judgment for defendant State Treasurer for whom the Franchise Tax Commissioner of the State of California was substituted. (Stats. 1939, ch. 1050, sec. 18, page 2968; Deering's Gen. Laws, 1939 Supp., Act 8488, sec. 30.) The action, submitted to the trial court upon an agreed statement of facts, is for the recovery of a corporation franchise tax paid under protest in the year 1931.

Plaintiff, organized under the laws of the State of California, was actively engaged in the business of manufacturing and selling filters and allied machinery and equipment, which it manufactured in a plant situated in the city of Oakland, until May, 1928. The United Filters, Incorporated, a Delaware corporation, conducted a like business in Pennsylvania. To effect a merger of the two companies, Oliver United Filters, Inc., was incorporated under the laws of the State of Nevada, and immediately qualified to do business in this state. To such company, plaintiff transferred all of its assets, except cash in the sum of $20,000, receiving therefor stock in the new (Nevada) corporation. The Delaware corporation, likewise assigned its assets to the Nevada corporation, and received stock therefor. Plaintiff immediately distributed to its stockholders as dividends part of the stock acquired, retaining, however, a portion thereof, on which it received dividends, disbursing them from time to time to its stockholders. This stock, together with the $20,000 cash retained, as above, constituted plaintiff's only asset, and, although it still retained all powers granted under its articles of incorporation, it did not actively engage further in the business it had previously conducted.

The income of plaintiff for the years 1929, 1930 and 1931 consisted of dividends from the stock of the Nevada corporation, and interest on loans made to that corporation by it, also on loans to its own principal stockholder, and to a number of its former employees made to enable them to retain stock of the Nevada corporation for which they had previously subscribed, and which stock the plaintiff held as security. After May, 1928, the plaintiff maintained no offices, and had no salaried employees, its only expense being that for bookkeeping services. Subsequent to the transfer of the assets of plaintiff corporation to the Nevada corporation,

the former was kept alive so that stock it so owned could be voted as a unit at meetings of the Nevada corporation.

In the year 1931 plaintiff paid the minimum franchise tax of $25 specified by law. Some time thereafter, upon demand, it paid to the commissioner under protest an additional sum of $7,174.88, based upon dividends received from the Nevada corporation on business transacted by that company out of the state, and upon interest received from loans. The additional assessment was made upon the theory that plaintiff was a business corporation actively doing business in California.

The questions on appeal involve the constitutionality of amendments, enacted by the legislature in 1931 to the Bank and Corporation Franchise Tax Act, which provide that "doing business" shall "include the right to do business," and the applicability thereof to appellant corporation. (Stats. 1929, ch. 13, page 19; Stats. 1931, ch. 1066, page 2225; Deering's Gen. Laws 1931, Act 8488.)

"All financial, mercantile, manufacturing and business corporations doing business within the limits of this state . . . shall annually pay to the state for the privilege of exercising their corporate franchises within this state a tax according to or measured by their net income." (Const. of California, art. XIII, sec. 16, subd. 2(a).) This section, adopted in 1928, also empowered the legislature to define "corporations" and "doing business" (subd. 5). In 1929 the legislature defined "corporation" as including every financial corporation, other than a bank or banking association, and every mercantile, manufacturing and business corporation of the classes referred to in subdivision 1(c) of section 5219 of the Revised Statutes of the United States. "Doing business" was defined to mean "any transaction or transactions in the course of business" by a corporation created under the laws of this state, or by a foreign corporation qualified to do or doing intrastate business in this state. (Stats. 1929, ch. 13, subd. 5, page 20.) In 1931, section 5 was amended to include "the enjoyment of the right to do business through such incorporation or qualification." (Stats. 1931, ch. 65, page 65.) At a later date in the same year the statute was further amended by eliminating the words "the enjoyment of," so that the term "doing business" "shall include the right to do business through such incorporation or qualification." (Stats. 1931, ch. 1066, sec. 5, page 2225.)

The California state constitutional amendment used the language found in section 5219, subdivision 1(c) of the United States Revised Statutes, [12 U. S. C. A., sec. 548] and the California act contained an express reference to such section. It has been held that in that situation the interpretation to be placed upon terms of state provisions shall be that given by federal courts to the same terms in the federal statute, and that in view of the fact that "doing business" as used in federal legislation fixing excise taxes has acquired a definite meaning through interpretation, which excludes application of the term to a holding company merely engaged in receiving dividends from stock of its subsidiary companies, the distribution of such dividends did not constitute doing business, and the state legislation did not apply to a holding company. (*Union Oil Associates* v. *Johnson*, 2 Cal. (2d) 727 [43 Pac. (2d) 291, 98 A. L. R. 1499].) In the Union Oil case, unlike the present, the corporation charter had been amended to limit its functions to those of a holding company. It was held (page 735) that "the state might have provided that holding companies should be subject to the tax along with other corporations. . . ."

The power of the state to levy the tax so far as national banks are concerned is based upon section 5219, subject to the limitation therein that the rate shall not be higher than that fixed by the taxing state upon other corporations of like character doing business within its limits. Section 5219 of the United States Revised Statutes does not prohibit the state from taxing holding companies on the basis of net income from dividends on stock held.

The question is not whether the 1931 amendments conflict with section 5219, but whether there is in fact a conflict with our own constitutional provision pursuant to which the Bank and Corporation Franchise Tax Act was enacted. The state Constitution does not define the term, but grants to the legislature express authority to give a definition. Under such condition it would be within the power of the people to permit the legislature to provide a different definition than that of federal decisions defining "doing business," assuming that the legislative specific definition covers activities within the federal grant of power to tax, and that the definition is akin and relevant to the subject which the constitutional amendment authorized the legislature to define, and is not inconsistent with other constitutional provisions.

Attention has not been called to any other claimed constitutional violation. The definition adopted by the legislature is germane to the subject, rationally relevant to the term ''doing business,'' and is within the federal grant of power to the state. In *Union Oil Associates* v. *Johnson, supra,* page 735, the court said: ''It is true that subdivision 1(c) of section 5219 is not a restriction upon the classes of corporations which the state may tax, and does not proscribe a tax upon holding companies measured by net income.'' Appellant corporation is not in fact organized as a holding company. It was transacting business. As above stated, it loaned funds to the corporation whose stock it held, to an individual, and to certain of its former employees. Some of the loans to these employees were uncollectible and were subsequently written off as bad debts. In the year 1930 plaintiff corporation paid out dividends in the sum of $200,000 upon receipts of $237,500 plus $1,829.26, dividends and interest respectively. In 1931 plaintiff received dividends in the sum of $12,500 and interest in the sum of $13,349.82, and paid dividends in the sum of $50,000.

Upon first examination, the phrase ''right to do business'' might give the impression that a new and irrelevant meaning had been created to designate the power over the subject given under the constitutional amendment. The same impression might possibly be gained if the legislature had used the following words: ''the privilege of exercising their corporate franchises within this state.'' If such definition had been adopted, the propriety thereof could have been predicated upon the exact language found in art. XIII, sec. 16, subd. 2(a) of the Constitution of the State of California. If the word ''right'' had been substituted for ''privilege,'' it could have been held that the words for the purpose of interpretation were reasonably synonymous in that there would be in the interchange of the two words neither enlargement nor diminution of the scope of authority conferred by constitutional amendment upon the legislature.

The phrase ''right to do business'' is not inconsistent with the constitutional amendment. The tax referred to therein was not placed on ''doing business'' except to the extent of fixing the amount of such tax as the equivalent to four per cent of net income, which is incidental to the main purpose of the constitutional amendment, namely, that a tax may be

levied on the privilege or right of exercising a corporate franchise in this state.

Sections 4 and 5 of the act simply sanction a tax upon a business corporation. The sections provide that the tax shall be fixed upon the basis of net income, and that in any event each such corporation shall pay a minimum tax of twenty-five dollars. In this case plaintiff's articles of incorporation provided that it was organized for the purpose and with the privilege and right, among other things, to buy, sell, transfer, invest and deal in real estate, stocks, bonds and personal property of every kind and character; to lend and borrow money and to engage and carry on the business of manufacturing, constructing and assembling machinery.

As applied to appellant corporation, if no business should be transacted, or if the net income should be less than a tax thereon justifying twenty-five dollars, the specified minimum is payable, otherwise the tax for the privilege or right to do business is measured by net income for the next preceding fiscal or calendar year, computed at the rate of four per cent (sec. 4).

The legislature directed, pursuant to constitutional authorization, that corporations during 1931-1933 incorporated for the purpose of doing business should pay a tax for the right to do business. In the Union Oil case the corporation did not have the right to do business. Appellant herein was organized for the purpose of doing business, and actually engaged therein. Appellant cites cases which are not directly in point. *Rose* v. *Nunnally Inv. Co.*, 22 Fed. (2d) 102, however, is worthy of mention. That case dealt with a reorganized corporation. Transactions similar to those in the present case were held not to be included in the term ''doing business'' upon the theory that a tax is based, not upon charter powers, but upon its activities. That rule may not be applied under the provisions of a statute wherein the test is the ''right to do business.'' In the latter instance, necessarily the charter powers determine the scope of activity.

The words ''right to do business'' may have given rise to some doubt, and in 1933 reference to the ''right'' was eliminated, the definition then reading: ''The term 'doing business' as herein used, means actively engaging in any transaction for the purpose of financial or pecuniary gain or profit.'' (Stats. 1933, ch. 210, page 694.) It is not necessary to dis-

cuss the change. The present case deals solely with the 1931 definition.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 2, 1942.

Traynor, J., did not participate therein.