AMERICAN UNITED LIFE INSURANCE COMPANY, Appellant, v. CHARLES R. FISCHER, Commissioner of Insurance, et al., Appellees.

No. 46356.

NOVEMBER 16, 1943.

REHEARING DENIED FEBRUARY 11, 1944.

Henry & Henry, of Des Moines, for appellant.

John M. Rankin, Attorney General, Floyd Philbrick, Assistant Attorney General, and R. O. Garber, of Des Moines, for appellees.

SMITH, J.— The question presented on these appeals is the liability of plaintiff to taxation (under section 7022, Code of Iowa, 1939) on account of certain life insurance premiums on policies written in Iowa by a foreign company while authorized to do business in Iowa, but collected *after* the writing company ceased to write new business in Iowa (or elsewhere) and was in receivership.

The writing company was the American Life Insurance Company of Detroit, a Michigan corporation, hereinafter called the American Life. Its receiver collected said premiums for 1938 and 1939 and later turned them over to plaintiff (an Indiana corporation, qualified to transact business in Iowa) under a contract we shall later refer to. Plaintiff, after entering into said contract, collected further premiums for 1939, 1940, and 1941. The taxes on account of all said premiums, levied under Code section 7022, were paid under protest. This suit is to recover the amount of same and to enjoin the collection of the tax on similar premiums to be collected in the future. The trial court ordered refund of the taxes paid on account of premiums collected by the receiver but denied plaintiff any further relief. All parties appeal. We shall hereinafter refer to plaintiff as appellant and the defendants as appellees.

The contract between appellant and the receiver of the American Life became effective April 13, 1938. It is long and complex but the pertinent provisions may be briefly and simply

stated. It is called a reinsurance contract, but the taking effect of the reinsurance feature is postponed fifteen years, or to a possible earlier date when a certain lien, placed by the receiver against the outstanding policies and contract obligations of the American Life, "shall be completely removed."

In the meantime, under it appellant took over all the assets of the American Life (after deduction of all expenses of custodianship and receivership and all amounts ascertained to be due various classes of creditors) and undertook the management of its assets and business until said lien is discharged or until the expiration of fifteen years, whichever proves to be earlier. It is expressly provided that during this management period appellant is to have no right "to accept or receive any profits or gains, directly or indirectly, from the assets transferred and conveyed or from the business reinsured."

The assets so taken over, together with premiums already collected, constitute a so-called fund to which subsequently collected premiums are to be added as collected and from which are to be paid the expenses of administration and the policy obligations and claims as they arise, according to a detailed adjustment schedule set up in the contract.

Before the making of this contract appellant was already licensed to do, and actually doing on its own account, a life insurance business in Iowa and it had an office in Des Moines. The American Life receiver had continued to maintain the American Life office in Des Moines. When appellant took over the management under this contract it continued the American Life office just as had the receiver. The cashier at that office sent out the premium notices as they were made out and forwarded to her, and collected the money and remitted it to appellant in Indianapolis each day as received. Appellant meanwhile continued its own Iowa office and continued its own business in Iowa.

In 1941 the two offices were combined and the expense of operation prorated between appellant on its own individual business and the business it was managing under the contract. This arrangement continued until the end of October 1942, when the combination Des Moines office was discontinued and thereafter everything was done direct from the home office in Indian-

apolis. At all times the business of the management of the American Life assets and the fund itself were kept entirely separate from appellant's own Iowa insurance business.

Both appellant and appellees contend the status of the premiums collected by the receiver and by him turned over to appellant, and the status of the premiums collected by appellant under the contract, are the same, under Code section 7022. However, appellant says *none* of said premiums is within the statute while appellees claim *all* come within it. The trial court, as we have said, made a distinction between them.

Section 7022, Code of Iowa, 1939, provides for a tax upon "the gross amount of premiums received" by foreign insurance companies "for business done in this state, including all insurance upon * * * the lives of persons resident in this state during the preceding year."

I. Appellant and appellees agree, both in pleading and argument, that this tax is a privilege or license tax. We have so held. State ex rel. Mitchell v. National L. Ins. Co., 223 Iowa 1301, 1307, 275 N. W. 26.

With this major premise established appellant proceeds to its minor premise: the continued existence of previously written policies, after the company ceases to write new business in the state, and the continued collection of premiums upon such policies after writing of new business is discontinued, do not constitute "doing business within the state."

From these premises appellant logically concludes that such premiums therefore do not make appellant subject to tax under our statute; that is, if continued existence of the license to do business is not necessary to the collection of the premiums, the authority to levy the premium tax does not exist. If the minor premise is sound the conclusion is inescapable. Such conclusion would be decisive—at least of defendant's appeal from the court's decision holding the taxes collected by the receiver not subject to the tax. Appellees deny the soundness of the minor premise.

Appellant first cites Provident Savings Life Assur. Soc. v. Commonwealth of Kentucky, 239 U. S. 103, 116, 36 S. Ct. 34, 38, 60 L. Ed. 167, 172, L. R. A. 1916C, 572. That case con-

cerned a Kentucky statute which, previous to a certain 1906 amendment, hereinafter referred to, was similar to our own. The Kentucky Court of Appeals held that after the company withdrew from writing new business in the state its liability to the tax would continue *because of the continued existence of its policy obligations in the state and its continued collection of premiums thereon*. Appeal was taken to the United States Supreme Court.

The supreme court opinion points out that the state court decision was based on the proposition that the state could treat "the mere continuance of the obligation of the existing policies held by resident policy holders" as justifying "the imposition of an annual privilege tax in the absence of the actual conduct of business within the limits of the State," and adds:

"We cannot conclude that the State has this power, and in this view the judgment must be reversed."

It should be noted here that an amendment to the Kentucky statute enacted in 1906 (Ky. Stat., 1909, section 4230a) provided that the foreign company would be liable for *continued payment of the tax so long as it continued to collect premiums, even after "it has voluntarily ceased to write insurance in the State or has withdrawn therefrom, or its license is suspended or revoked * * *."* (Italics ours.)

The supreme court, however, says that the state court did not rest its decision upon this amendment but treated it as declaratory of the law under the statute as previously existing (not distinguishable in legal effect from our own), under which the company had been actively doing business in the state before its withdrawal on January 1, 1907.

A short quotation from Justice Hughes' opinion is pertinent and illuminating here. After dismissing consideration of the 1906 amendment as not applicable to the case, and referring to the state's contention under the previous statute, he says:

"There is, however, a manifest difficulty in holding that the mere continuance of the obligation of the policies constituted the transaction of a local business for which a privilege tax could be exacted. *As a privilege tax, the tax rests upon the*

*assumption that what is done depends upon the State's consent. But the continuance of the contracts of insurance already written by the Company was not dependent on the consent of the State."* (239 U. S. 103, 113, 36 S. Ct. 34, 37, 60 L. Ed. 167, 171. The italics are ours.)

Appellees argue that the decision in Continental Assur. Co. v. Tennessee, 311 U. S. 5, 61 S. Ct. 1, 85 L. Ed. 5, has in some way modified this decision in the Provident Life case. We do not so read it. The Continental case involved a Tennessee statute quite similar to the Kentucky statute *as amended in 1906.* However, it provided, in effect, that the company, taking out or renewing a license, thereby consented to a payment of the tax *so long as the policies remained in force.*

The Tennessee court held this was a "condition to the exercise of the privilege of writing insurance policies, kept alive by annual payment of premiums * * *." State v. Continental Assur. Co., 176 Tenn. 1, 6, 137 S. W. 2d 277, 278, 138 S. W. 2d 447. The opinion says:

"Though measured by two and a half per cent of premiums received on policies issued by the company *while exercising its license* from the State, the tax was levied *upon the privilege of entering the State* and engaging in the insurance business, and *not upon the annual premiums.* The distinction between the tax and the measure of the tax should not be confused * * *. *The tax on premiums received after the company's withdrawal from the State is not a tax upon premiums mailed by residents of the State to defendant after its withdrawal. No such tax could be imposed."* (Italics are ours.) Citing State v. Connecticut Mut. L. Ins. Co., 106 Tenn. 282, 61 S. W. 75.

The United States Supreme Court says this construction of the statute distinguishes the Continental Assurance Company case from Provident L. Assur. Soc. v. Kentucky, supra. In other words, the Tennessee statute by its very terms made the continued payment of the tax during the entire life of the policies a part of the consideration for the original right to enter the state, and for the renewal of that right from year to year. The company, by entering, accepted this condition and bound itself to the con-

tinued payment of the tax and could not, by withdrawal, repudiate its contract thus entered into.

We have no such statute. Our tax is upon business done and upon the privilege of doing business. Scottish U. & N. Ins. Co. v. Herriot, 109 Iowa 606, 80 N. W. 665, 77 Am. St. Rep. 548. Each annual tax is for the privilege of doing business, *not in the future, not for the current year in which the tax is paid, but for the privilege of doing business during the year in which the premiums are received.* State ex rel. Mitchell v. National L. Ins. Co., supra, citing Commissioner of Insurance [Gauss] v. National L. Ins. Co., 280 Mich. 344, 273 N. W. 592, and Carpenter v. Peoples Mut. L. Ins. Co., Cal. App., 65 P. 2d 827, 829 [10 Cal. 299, 74 P. 2d 508]. In this respect our statute is clearly distinguishable from the Tennessee statute, which provides not only that the tax is to be paid so long as the policies remain in force but, in effect, that from the original taking out of the license and the renewal of same from year to year it is to be conclusively presumed that the tax will continue to be paid so long as the policies remain in force. State v. Continental Assur. Co., supra.

It is to be said that prior to the change in the Tennessee statute which added to it the provision we have referred to, the Tennessee Supreme Court held the tax could not be levied after the company withdrew from writing new policies in the state, *even though it continued to collect premiums on policies already written.* State v. Connecticut Mut. L. Ins. Co., supra. The Continental case makes the distinction, necessitated by the difference in statute.

We are of the opinion that continued existence of policies in the state and continued collection of premiums on them do not constitute "doing business" within the state when unaccompanied by the writing of further policies. We are also of the opinion that after withdrawing from the state, neither the company nor its receiver is liable for further tax on account of premiums thereafter collected. The receivership proceedings terminated the right of the American Life to write insurance in Iowa. It was equivalent, in legal effect, to a voluntary withdrawal by the company. Collection of premiums by the receiver

was equivalent to collection by a company after voluntary withdrawal.

The cases we have discussed seem controlling here. They involve statutes which provide for so-called "premium taxes." It is not necessary to discuss other cases cited which are claimed to be analogous. It follows that the district court properly ordered refund of the taxes paid on account of premiums collected by the receiver and that part of the decree must be affirmed.

II. We have discussed the foregoing proposition at considerable length, not alone because of its bearing on the taxes based on premiums collected by the receiver. Appellant strenuously argues that the taxes paid on account of premiums collected directly by it (under the contract) are in the same category. We think the analogy is sound.

This suit is brought by plaintiff (appellant) by virtue of its status under the contract with the receiver of the American Life. That contract is called a "Reinsurance Agreement." What it is called does not absolutely determine its legal character. The language of the instrument controls.

The nature of the agreement, however, is not in doubt. The assets of the American Life are turned over to appellant and constitute "The Fund." Proceeds of the premium collection go into this fund. Appellant's assumption or reinsurance of the outstanding policies of the American Life clearly is limited for the present to an agreement to pay "to the extent The Fund will permit." Until the expiration of fifteen years or "until such prior time as the liens shall be entirely removed from all policies," the liability of appellant is thus limited. It is really a contract to reinsure at a future time, rather than a present reinsurance contract.

Meantime appellant is charged with the management of the fund, with the collection of premiums, and with the performance of all duties incident to the business of the American Life made necessary by the continued existence of its policy obligations.

We are of the opinion that appellant's status is that of a trustee or agent. The premiums it collects are not its own. The losses it pays are not paid out of its own funds but out of "The Fund"; the business it conducts is that of a quasi receiver or

trustee and not of an insurance company. There seems no reason why the receiver might not have continued to perform the functions appellant is performing, as he in fact did for a time; no reason why an ordinary trustee, unconnected with the business of life insurance, might not have been appointed to perform them.

We are unable to agree with the view of the district court that appellant had some interest in the premiums collected or in the business transacted that makes it liable for this tax. Whatever may happen in the future, appellant is not now a reinsurer of the American Life policies or the owner of the fund into which the premiums upon the American Life policies go.

By the express words of the statute it applies only to foreign insurance companies. The intent is clear that it refers to such companies as are transacting business in Iowa that requires a license or consent from the state. We have already held that mere collection of premiums on already existing policies is not ''doing business'' in the sense of the statute.

The fact that the collection of such premiums is being made by an agency or trusteeship, represented by a foreign insurance company which is also transacting its own business in Iowa in its own right, cannot make it liable for this tax when there is no business of the agency or trusteeship being performed to make anybody liable. What is being done to keep alive these policy obligations of the American Life requires no consent or license from the state.

The case is one of first impression but the reasoning seems clear. If the receiver was not liable for any tax because not continuing the business of the defunct company, though collecting premiums on its outstanding policies, we scarcely see how appellant can be held liable in the same circumstances, collecting the same premiums, performing the same functions, simply because it happens to be a foreign insurance company doing its own business in Iowa, or because it has entered into a contract by which eventually it will reinsure the then existing policies of the American Life.

Our construction of this contract and appellant's status under it is supported by a decision of the Circuit Court of Appeals for the Sixth Circuit which recently had occasion to construe it to determine whether the conveyances under it, by

the receiver to this appellant, were subject to the federal stamp tax. That court says:

"The provisions of the instruments are consistent with the existence of the relationship of principal and agent, but are inconsistent with the relationship of vendor and vendee." Berry v. Kavanagh, 137 F. 2d 574, 576.

We conclude that appellant was entitled to the relief demanded as to the taxes paid on account of premiums collected by it and also to the injunctive relief demanded. The case will be remanded for decree in accordance with this opinion.

Affirmed upon defendant's appeal and reversed upon plaintiff's appeal.—Affirmed in part; reversed in part.

GARFIELD, BLISS, HALE, MILLER, WENNERSTRUM, OLIVER, and MANTZ, JJ., concur.

MULRONEY, C. J., takes no part.