[Civ. No. 12652.   First Dist., Div. One.   Sept. 21, 1944.]

THE PEOPLE, Appellant, v. ALLIANCE LIFE INSURANCE COMPANY (a Corporation), Respondent.

(Two Cases.)

Robert W. Kenny, Attorney General, and T. A. Westphal, Jr., Deputy Attorney General, for Appellant.

Burbank & Laumeister and Daniel W. Burbank for Respondent.

WARD, J.—This is an appeal by plaintiff from two judgments in favor of defendant insurance company in actions for taxes assessed upon premiums estimated by the Insurance Commissioner to have been received from its business done in this state in the calendar years 1939 and 1940 respectively.

Defendant is an Illinois corporation engaged in the writing of life and disability insurance. On July 1, 1938, it was issued a license by the Insurance Commissioner of the State of California to do business in this state. Prior to July 1, 1939, when, by its terms and by operation of law its license would have expired unless sooner revoked, plaintiff closed its offices and withdrew all of its agents from this state, and from and after July 1, 1939, ceased to transact any business in this state. Premiums on policies previously written were thereafter mailed direct to the company's home office in Illinois.

The company paid the prescribed taxes on its reported gross premiums for the period from January 1, 1939 to July 1, 1939, but it made no report of business done thereafter to the In-

surance Commissioner, who thereupon estimated such business for the period from July 1, 1939 to December 31, 1939, and from January 1, 1940 to December 31, 1940, and reported the same to the State Board of Equalization, which thereupon assessed taxes provided for by subdivision (b) of section 14¾ of article XIII of the Constitution, including penalties. Two actions were brought for the recovery of the taxes, one for each period, and these were consolidated for trial.

The question involved is whether a foreign insurer is liable for taxes upon gross premiums on insurance policies written in this state while it was licensed to do business herein but remitted to its home office direct after it had entirely ceased to do business in this state and after its certificate of authority so to do had expired, the insurer not having withdrawn from the state in the manner prescribed by sections 1070-1074 of the Insurance Code of the State of California or reinsured its business under section 1090 of that code.

Subdivision (b) of section 14¾ of article XIII of the Constitution of the State of California provides that an insurance company doing business in this state shall pay a tax upon the amount of gross premiums received upon its business done in this state. The gross premiums tax has been held to be a franchise tax for the privilege of doing business in California. (*Consolidated Title Sec. Co.* v. *Hopkins,* 1 Cal.2d 414 [35 P.2d 320]; *Carpenter* v. *Peoples Mut. Life Ins. Co.,* 10 Cal. 2d 299 [74 P.2d 508]; *Hartford Fire Ins. Co.* v. *Jordan,* 168 Cal. 270 [142 P. 839]; *Edward Brown & Sons* v. *McColgan,* 53 Cal.App.2d 504 [128 P.2d 186]; *Pacific Co., Ltd.* v. *Johnson,* 212 Cal. 148 [298 P. 489].)

The gross premiums tax is a tax on the right to do business during the particular year in which the contract of insurance is written and the premium paid, and during subsequent years in which the company continues to be certified to do business in this state. (Ins. Code, § 700.) Appellant contends that when the foreign state insurer seeks admission to this state, it impliedly agrees to comply with statutory provisions affecting its withdrawal from the state; that if it neglects to comply with such provisions it is still an admitted company "at least in the sense that the State has not consented to its departure from the State," and that in continuing to receive premiums at its home office outside of the state

it is transacting business arising out of insurance written in California and is therefore subject to the tax, and this notwithstanding that its certificate, though not revoked, had expired (Ins. Code, § 701), and the company, by withdrawing its representatives and employees and writing no new business here, had ceased doing business.

If this were a case of first impression it might be held that an insurance company is "doing business" in California as long as it receives premiums from policyholders in this state. This conclusion could be reached upon the theory that a second or subsequent act in a series of acts is of equal importance in a tax question determining when a company is "doing business." (See *Oliver Cont. Filt. Co.* v. *McColgan,* 48 Cal.App. 2d 800 [120 P.2d 682]; *Union Oil Associates* v. *Johnson,* 2 Cal.2d 727 [43 P.2d 291]; *Edward Brown & Sons* v. *McColgan, supra,* 507.)

This is not a case wherein it is attempted to collect, from a foreign company that has ceased to do business in this state, taxes which accrued prior to its cessation of business but were not collectible until subsequent thereto, as in *Carpenter* v. *Peoples Mut. Life Ins. Co.,* 10 Cal.2d 299 [74 P.2d 508], where at pages 302, 303, the court said: "Payment of the tax may precede the exercise of the privilege or it may follow it, depending upon what system the legislature chooses to provide; and where, as here, the tax is in proportion to the amount of business alone, it is both equitable and convenient that it be paid after the conclusion of the year in which the privilege is exercised. The choice of such a method is within the legislative discretion." " 'We therefore hold that the tax on insurance companies levied pursuant to section 14, subdivision (b), of article XIII of the Constitution is an excise or privilege tax and not, as contended by appellant Insurance Commissioner, a property tax. The trial court, therefore, was correct in holding that Peoples Mutual Life Insurance Company became liable for the tax here in question during 1932, because it received in the course of doing business the premiums upon which the tax was imposed, and such tax is for the privilege of doing business during the year in which the premiums were received by the insurance company.' "

A constitutional provision such as subdivision (b), section 14¾, article XIII, imposing a tax upon the amount of

gross premiums collected by a foreign insurance company, applies only to companies the transaction of whose business requires the consent of the State of California. The mere collection of a premium sent through the mail from this state to the home office of the company is not such an act as requires the permission of this state for its transaction. (*State* v. *Connecticut Mut. Life Ins. Co.*, 106 Tenn. 282 [61 S.W. 75]; *State* v. *National Life Ins. Co. of U. S.*, 223 Iowa 1301 [275 N.W. 26]; *Commissioner of Insurance* v. *National Life Ins. Co.*, 280 Mich. 344 [273 N.W. 592].)

There is a statutory provision in California that an insolvent insurer, upon retiring from business in this state, shall not reinsure its business unless its plan to effect such reinsurance is approved by the State Insurance Commissioner. (Ins. Code, § 1090.) An insurance company by writing no new policies may cease to do business and no statute called to our attention requires a company in that situation to reinsure its business except as above set forth. The internal affairs of a foreign insurance company licensed to do business in this state are ordinarily conducted according to the laws of the state of its domicile. This arises from its inherent reasonableness and practical necessity, which often compels a state licensing a foreign insurance company to accept the financial and other statements emanating from the home state. (*Equitable Life Assur. Soc.* v. *Johnson*, 53 Cal.App.2d 49 [127 P.2d 95].)

Appellant treats the matter of taxes as an incident in the case, and directs attention to whether an insurance company may withdraw from transacting business without strictly complying with Insurance Code, sections 1070 to 1074, providing a method of withdrawal, and section 1090, providing for approval of a reinsurance plan, and without making provision for reinsurance of its contracts written during the period it was certified to do business in this state. However, whether the respondent company was "doing business" within the State of California so as to be subject to the tax levied under article XIII, section 14¾, subdivision (b) of the Constitution of the State of California, is the real question involved in this case.

Appellant argues that there is a serious issue, namely, the plight of the policyholders, and that this issue is "hidden by the fact that the case is one for the recovery of taxes."

There is nothing in the record indicating that the policyholders have lost or are in any danger of losing any interest, financial or other, but, assuming that the record so indicates, a tax may be imposed only by express statutory authority, and courts, though convinced of the wisdom of extension or curtailment of a statutory provision, should not disregard the plain language of a statute. (*Pioneer Express Co.* v. *Riley,* 208 Cal. 677 [284 P. 663] ; *People* v. *Duntley,* 217 Cal. 150 [17 P.2d 715] ; *American Co.* v. *City of Lakeport,* 220 Cal. 548 [32 P.2d 622] ; *Wulff-Hansen & Co.* v. *Silvers,* 21 Cal.2d 253 [131 P.2d 373].) ▮ A statute purporting to impose a tax should not be upheld unless its terms are clear and explicit. (*Hill* v. *City of Eureka,* 35 Cal.App.2d 154 [94 P.2d 1025] ; *Barker Bros., Inc.* v. *Los Angeles,* 10 Cal.2d 603 [76 P.2d 97].)

▮ The case that determines the present appeal is *Provident Savings Life Assur. Soc.* v. *Kentucky,* 239 U.S. 103 [36 S.Ct. 34, 60 L.Ed. 167], in which a New York insurance company transacting business in Kentucky prior to January 1, 1907, paid to that state a tax on premiums collected on its business in Kentucky. On January 1, 1907, the company ceased to do business in Kentucky by withdrawing its agents, etc., but, during the succeeding four years, it accepted premiums, upon policies previously issued, at its home office in New York. In 1911 the company reinsured its business with the Postal Life Insurance Company, also a New York corporation, which company thereafter collected the premiums on Kentucky business so reinsured with it, receiving them through the mail at its home office. In that case it was agreed that the tax, if payable, was due as an imposition "for the privilege of doing business in Kentucky"; and the state contended that it was seeking to enforce an implied statutory agreement arising upon the entry of the company into the State of Kentucky and conducting business therein. The company argued "that the imposition of the tax on premiums received after the Company had withdrawn from the State was contrary to the due process clause of the Fourteenth Amendment." The court stated the question as follows (p. 112) : "In the present case it is not the measure of the tax for doing business, but the very basis of the tax—that is, whether the Company was doing business within the State— that is in controversy" and said (pp. 112-113) : "But the

continuance of the contracts of insurance already written by the Company was not dependent on the consent of the State. It is true that acts might be done within the State in connection with such policies, as for example in maintaining an office or agents although new insurance was not written or solicited, which could be considered to amount to the continuance of a local business. In such case it would be the actual transaction of business that would furnish the ground of the license exaction, and not the mere existence of the obligation under policies previously written. These policies are contracts already made; the State cannot destroy them or make their mere continuance, independent of acts within its limits, a privilege to be granted or withheld. Neither the continuance of the obligation in itself, nor acts done elsewhere on account of it, can be regarded as being within the State's control." The Supreme Court of the United States concluded that the state did not have such power.

In *Continental Assurance Co.* v. *Tennessee,* 311 U.S. 5 [61 S.Ct. 1, 85 L.Ed. 5], it appears that Tennessee had a direct statutory provision that a foreign insurance company doing business in Tennessee should continue to pay a gross premiums tax upon premiums collected during the life of outstanding policies notwithstanding the company had ceased to write new business in the state. It was decided that the direct statutory provision was a condition which existed at the time the foreign company entered the state. The appeal to the United States Supreme Court was dismissed for want of a substantial federal question. At pages 6-7 the court said: "This construction of the statute distinguishes the case from that of *Provident Savings Life Assur. Soc.* v. *Kentucky,* 239 U.S. 103 [36 S.Ct. 34, 60 L.Ed. 167]. There the question under the statute, as it had been construed by the state court, was whether the insurance company continued to do business within the State for the period under consideration, despite the fact that it had withdrawn from the State, merely because of the receipt of premiums after withdrawal. The tax was not laid upon the privilege of doing business during the period that the company was actually within the State, the tax on that privilege being measured by the premiums received during the life of the policies. *Id.,* pp. 110, 111. The Supreme Court of Tennessee emphasized the point of this dis-

tinction in its opinion on rehearing. [176 Tenn. 1, 137 S.W.2d 277] 138 S.W.2d 447.'' California has no provision comparable to that in the Tennessee code—section 6120. It is interesting to note that prior to the adoption of such section it was held in Tennessee that a foreign company could not be so taxed, after the company had withdrawn, on premiums collected on policies previously written. (*State* v. *Connecticut Mut. Life Ins. Co.*, *supra.*)

In *American United Life Ins. Co.* v. *Fischer*, —— Iowa —— [11 N.W.2d 573, 574], the court said: ''The question presented on these appeals is the liability of plaintiff to taxation, under section 7022, Code of Iowa 1939, on account of certain life insurance premiums on policies written in Iowa by a foreign company while authorized to do business in Iowa, but collected *after* the writing company ceased to write new business in Iowa (or elsewhere) and was in receivership.'' The court considered *Provident Savings Life Assur. Soc.* v. *Kentucky*, 239 U.S. 103 [36 S.Ct. 34, 60 L.Ed. 167] and *Continental Assurance Co.* v. *Tennessee, supra,* and determined that the Iowa statute was unlike the Tennessee statute in that in Iowa the tax was ''upon business done and upon the privilege of doing business.'' This holding was based upon the opinion written by Mr. Justice Hughes in the Kentucky case in 239 U.S.

The term ''gross premiums . . . received upon its business done in this State,'' as used in the Constitution, was presented for construction in *Western T. Acc. Assn.* v. *Johnson*, 14 Cal. App.2d 306 [58 P.2d 206], in which case at pages 311-312 the court said: ''It is the actual transaction of business that furnishes the ground of license exaction, and not the mere existence of the obligation under the policies previously written. These policies are contracts already made; the state of Nebraska 'cannot destroy them or make their mere continuance, independent of acts within its limits, a privilege to be granted or withheld. Neither the continuance of the obligation in itself, nor acts done elsewhere on account of it, can be regarded as being within the state's control.'

''The business conducted by appellant after it took over the business of the Nebraska association and withdrew from the state of Nebraska was business done in the state of California. . . .''

In the Western T. Acc. Assn. case California was the home state of plaintiff. A similar company had been organized in Nebraska; as a foreign company it was licensed to do business in California. Subsequently the California company assumed all of the liabilities of the Nebraska company, including those in connection with policies then in existence in Nebraska, and qualified to do business in Nebraska. The Nebraska company was dissolved, and its assets transferred to the California company which thereafter carried on the business under its California license, collecting premiums on insurance, already written in Nebraska, by mail. It was held that such premiums were subject to tax in this state. The facts are reversed in the present case. Illinois is the home state; California, the state in which the Illinois company was formerly authorized to do business.

We can find no logical reason for holding on a tax question that sections 1070-1074 and 1090 of the Insurance Code in anywise apply to a foreign company whose certificate to do business has expired and its only business consists in receiving by mail premiums on policies written within the years of its certification to do business here. If it is the purpose of California to collect from a foreign corporation taxes on premiums payable after its license has been permitted to expire and it has ceased to do business in this state, then the Legislature should speak in terms similar to those of the Tennessee statute.

The judgments entered in the San Francisco Superior Court in cases numbered 302,343 and 308,787 are affirmed.

Peters, P. J., and Knight, J., concurred.