JOHN RYBASACK, WHO SUES FOR HIMSELF AS WELL AS FOR THE STATE OF NEW JERSEY, PLAINTIFF, v. THE TRAVELERS INSURANCE COMPANY, A CORPORATION, DEFENDANT.

Decided February 4, 1937.

For the plaintiff, *William Harris*.

For the defendant, *Lindabury, Depue & Faulks*.

OLIPHANT, C. C. J.   This matter is before me, sitting as a Supreme Court commissioner, on a motion to strike the complaint on the grounds that it is in part sham, in part frivolous and that it does not state a good cause of action against the defendant.

The suit instituted by the plaintiff is a common informer's action in which the plaintiff claims damages under and by virtue of sections 1 and 2 of chapter 168 of the laws of 1895 (2 *Comp. Stat.*, p. 2876, § 117), as amended by chapter 167 of the laws of 1927.   *Supp. Comp. Stat.* 1925-1930, p. 867, § 99-121.   Section 1 reads as follows:

"No life insurance company doing business in this state shall make or permit any distinction or discrimination in favor of individuals between the insured of the same class and equal expectation of life   *   *   *."

Section 2 of chapter 168 of the laws of 1895, *supra,* is in part as follows:

"Any person or corporation violating any of the provisions of the preceding section of this act shall, for each and every offense, forfeit and pay the sum of one hundred dollars for every twenty-five hundred dollars of insurance or fraction thereof effected by the said policy contract of insurance; such penalty to be sued for and recovered with costs in an action of debt in any court of competent jurisdiction in the county where the offense shall have been committed, or in any county wherein such offender may reside or be served with process, by any person who shall sue for the same; one-half of such penalty shall be for the benefit of the person prosecuting the suit, and the other half shall be paid to the state treasurer for the benefit of the school fund of the state."

The plaintiff alleges that in April, 1936, the James Butler Grocery Company entered into an insurance contract with the defendant company for the purpose of obtaining group insurance for certain grocery store owners and their employes, some of which stores were owned by the James Butler Grocery Company, others not; that no employer and employe relationship existed between the owners of some of the stores and others engaged in and about some of the stores covered by the contract of insurance; that the premium charged for the life insurance to the store owners and others is less than the premium charged to individuals who obtained similar life insurance protection without the benefit of the contract which exists between the James Butler Grocery Company and the Travelers Insurance Company, and that the rates are less than regular manual rates filed. He then charges that by reason of the foregoing, the defendant company has violated the provisions of the statute heretofore quoted in that all the assureds under the contract between it and the James Butler Grocery Company have received distinction or discrimination and special favor or advantage expressly forbidden by statute.

The affidavits show that some of the members of the group of assureds are residents of New Jersey and further, that the defendant company is not domiciled here but is licensed to do business in this state.

The contract of insurance between the defendant and the James Butler Grocery Company was executed in the State of New York. Payment of premiums and loss, if any, was to be made in the State of Connecticut.

There can be no question but that the State of New Jersey cannot interfere with a contract of insurance made outside the state; and that a contract valid in the state wherein made is valid everywhere. The state cannot by its statutes control or impair transactions which are extra-territorial. *Allgeyer* v. *Louisiana,* 165 *U. S.* 578; *Palmetto Fire Insurance Co.* v. *Beha,* 13 *Fed. Rep.* (*2d*) 500.

The problem presented in this case is the construction of the words "doing business in this state" as contained in section 1, chapter 168, *Pamph. L.* 1895, as amended by chapter 167, *Pamph. L.* 1927, supra.

Defendant contends that the statute prohibits any life insurance company which does business in this state from having discriminatory rates anywhere and says that the purpose of the legislation was to insure the financial stability of life insurance companies and to protect the public so that in buying life insurance, one person would not be preferred over another. How can it be said that if a life insurance company charges higher rates in other states or countries it can affect a company doing business here?

The statute does not concern the power of the commissioner of banking and insurance to authorize a license or to revoke the license of an insurance company to do business in this state for financial instability or for making discriminatory rates.

It is a penal statute and must be strictly construed.

I am not persuaded by the arguments on behalf of the plaintiff or the cases cited in support thereof. A clear reading of the statute leads to the conclusion that what the legislature meant by "doing business in this state" was the making of contracts in this state. Otherwise it would have said "no company shall be allowed to do business in this state unless its rates are the same the world over and no matter where the contract is made." What the legislature sought to

do was to prevent in contracts for life insurance entered into in this state a discrimination or distinction. There is no doubt of the power of the state to prohibit foreign insurance companies from doing business within its limits. As a condition of admission, the state can impose such conditions as it pleases upon *the doing of any business by those companies within its borders,* and unless the conditions be complied with, the prohibition may be absolute. *Allgeyer* v. *Louisiana, supra.*

In *Palmetto Fire Insurance Co.* v. *Beha, supra,* the question presented was, "if the Palmetto Fire Insurance Company in the transaction of its business within the State of New York does not violate the laws of New York, can its license to do business within the state be revoked because of the manner in which it conducts its business in some third state in which its business is validly conducted?" The court answered the question in the negative and said in part, "this state cannot forbid contracts of insurance relating to risks within its limits from being made between a citizen and a corporation in another state" and applied this principle even though the company complained of in that case had a license to do business in New York.

The case of *State* v. *Lancashire Fire Insurance Co.,* 66 *Ark.* 467, is very pertinent to the case *sub judice.* That was an action by the state against a foreign insurance company in which the state claimed a penalty of $500. The statute which the state claimed had been violated in part read as follows: "Any corporation organized under the laws of this state or any other state or country, and transacting or conducting any kind of business in this state * * * who shall create or enter into or become a party to any pool agreement, contract, combination, association or confederation to fix or limit the price or premiums to be paid for insuring property against loss or damage by fire, shall be deemed and adjudged guilty of a conspiracy to defraud and be subject to the penal-... by this act." The attorney-general contended ...urance company, while a member of a trust or .nation to fix rates in any portion of the world, could

do business in Arkansas without becoming liable to the penalty provided by the statute. The court said the question presented was "whether a foreign corporation, doing a fire insurance business in this state, subjects itself to a penalty by entering into an agreement with other insurance companies for the purpose of fixing rates of insurance in foreign countries, when such an agreement is neither made in this state, nor intended in any way to affect the prices or premiums to be paid for insuring property in this state."

In part answering that question, the court said: "In determining the meaning of this statute, we must keep in mind certain well known rules of construction, based on reason, and so well settled that members of the legislature must be supposed to have been familiar with them, in framing the law. One of these rules is that the legislature is presumed to intend that its statutes shall not apply to acts or contracts done or effected beyond the limits of the state, and having no reference to or effect upon persons or property in this state * * *. For this reason, although the legislature may use general words in describing the persons or acts to which the statute applies, still it does not follow that the law has an extra-territorial effect; for it is presumed that the legislature did not intend it to have such an effect unless the language of the statute admits of no other construction. *Bond* v. *Jay, 7 Cranch* 350." Further the court said: "It is unusual for a legislature to intend that its statutes shall apply over the whole world. * * * It is so unusual for a legislature to intend that its acts shall have such world-wide effect that courts are never justified in putting such construction upon them, if their language admits of any other reasonable construction."

If the argument and construction placed upon the statute by counsel for the plaintiff is followed and applied it would lead to absurd lengths. The defendant company probably carries on business throughout the world. Can it be that a different, lower if you will, rate for a life insurance contract cannot be made in London, Shanghai or Calcutta than here, even though the company does do business here, without sub-

jecting that company to a penalty? Can it be that a resident of New Jersey cannot go to New York or Paris and make a contract for life insurance at a lower rate than he could obtain for the same policy in New Jersey without subjecting the company to a penalty?

In construing a penalty statute concerning the writing of fire insurance policies, wherein the words "legally authorized to do business in this state" were used, the Court of Appeals of Texas in *Smelker* v. *Scott,* 288 *S. W. Rep.* 801, said: "It is plain, we think, that compensation paid in another state by a non-resident corporation to a non-resident agent under a contract made outside of Texas is not within the subject-matter of the statute's inhibitive words.

"If the statutes did contain grant of authority for the order, it seems to us they would operate extra-territorially and thus plainly in violation of the fourteenth amendment. *Fidelity and Deposit Company of Maryland* v. *Tafera,* 270 *U. S.* 426 \* \* \*. We cannot attribute to the legislature the purpose to do an unconstitutional thing in the absence of terms employed by it evidencing that intent."

In *People, ex rel.* v. *Van Amringe,* 266 *N. Y.* 277, in a case involving group insurance, the Court of Appeals said: "In construing a section of the penal law, it is settled law that a state cannot forbid contracts of insurance relating to risks within its limits from being made between a citizen and a corporation in another state." *Allgeyer* v. *Louisiana, supra; Aetna Life Insurance Co.* v. *Dunken,* 266 *U. S.* 389; *New York Life Insurance Co.* v. *Dodge,* 246 *Id.* 357.

It is my conclusion that the statute does not apply to contracts of life insurance made and entered into outside of this state. That the words used in the statute "doing business in this state" mean the writing of business or the making of contracts in this state and that the legislature did not intend to punish acts done without its limits even though a person covered or affected thereby might be a resident of New Jersey.

The motion to strike the complaint will be granted, and an order in conformance with this view may be presented.