liJONES, Judge.
Plaintiff, Enterprise Leasing Company of New Orleans appeals a judgment granting the defendant, General Star Indemnity Company’s motion for summary judgment and dismissing its claims against the defendant.

FACTS

The plaintiff, Enterprise Leasing Company of New Orleans rented a Nissan Sentra automobile to Mr. Ronald Simmons. Pursuant to the rental agreement, Mr. Simmons was obligated to return the vehicle in an undamaged condition. Mr. Simmons agreed to pay the retail value of repairing the vehicle if any *1298 damage was caused to the vehicle. While the vehicle was in Mr. Simmons’ possession, the vehicle was involved in a collision resulting in property damage of $4,824.71.
At the time that the collision occurred, Mr. Simmons had in effect an automobile insurance policy issued by General Star Indemnity Company providing comprehensive and collision insurance coverage on a 1990 Mitsubishi pickup truck which Mr. Simmons owned.
12Notwithstanding the fact that the policy issued by General Star contained no specific provisions obligating General Star to cover temporary substitute vehicles and/or passenger rental cars, Enterprise made claims to both Mr. Simmons and General Star for payment of the damages caused to the rental vehicle. General Star maintained that it was not obligated to cover the rental vehicle under the comprehensive and collision policy issued to Mr. Simmons, and refused to pay. Enterprise then filed the instant lawsuit against Mr. Simmons and General Star.
Simmons subsequently agreed to entry of a partial consent judgment in favor of Enterprise. Enterprise and General Star entered into a joint stipulation of undisputed facts and both parties then filed cross motions for summary judgment. In the joint stipulation, the parties agreed that General Star was a foreign insurer not admitted to do business in the State; that General Star was a surplus line insurance company as defined by La.R.S. 22:1257; that General Star was an “unauthorized insurer”; that General Star issued to Mr. Simmons an insurance policy for comprehensive and collision insurance with respect to a 1990 Mitsubishi pickup truck; that Enterprise rented a 1992 Nissan Sentra to Mr. Simmons; that the rental vehicle was involved in an accident while in Mr. Simmons’ possession and that the total claim for damages was $4,824.71.
Following a hearing on the cross motions for summary judgment, the trial court concluded that the provisions of La.R.S. 22:1406(F) did not extend collision coverage for rental vehicles to surplus line insurance contracts. Accordingly, the trial court granted summary judgment in favor of General Star and dismissed the claim of Enterprise.

DISCUSSION AND LAW

On appeal, Enterprise argues that the trial court erred by finding that General Star, a surplus line insurer in the State of Louisiana, was not obligated to | aprovide collision coverage to a rental car under the terms of La. R.S. 22:1406(F) and La.R.S. 22:1259.
La.R.S. 22:1406(F) states:
“Every insurance company^ reciprocal or exchange, authorized to unite automobile liability, physical damage, or collision insurance, shall extend to temporary substitute motor vehicles as defined in the applicable insurance policy and rental private passenger automobiles and all such insurance coverage in effect in the original policy or policies....” (emphasis added)
Pursuant to this provision, automatic coverage to any rental or temporary substitute vehicles is extended in cases where an insurance policy issued by an insurance company authorized to write insurance in this State provides for comprehensive and collision insurance on any vehicle of the insured. If this section applies to surplus line insurers, the fact that the policy issued by General Star to Mr. Simmons does not expressly cover rental vehicles is irrelevant. Coverage would automatically be extended to rental vehicles by virtue of the statute.
General Star argues that because it is an unauthorized insurer who provided surplus line insurance pursuant to the provisions of La.R.S. 22:1257, the provisions of La.R.S. 22:1406(F) do not apply. However, Enterprise maintains that the provisions of La.R.S. 22:1259 mandate that obligations placed upon authorized insurers must equally be imposed upon unauthorized insurers providing surplus line coverage. Consequently, Enterprise argues that the provisions of 22:1406(F) apply to unauthorized insurers that provide insurance to residents of this state, as well as authorized insurers.
La.R.S. 22:1259 provides:
*1299 § 1259. Surplus line insurance valid
Insurance contracts procured as surplus line coverage from unauthorized insurers in accordance with this Part shall be fully valid and enforceable as to all parties, and shall be given recognition in all matters and | respects to the same event as like contracts issued by authorized insurers.
Enterprise notes that in Gray & Co. v. Stiles, 221 So.2d 832 (La.App. 1st Cir.1969) and Veal v. Interstate Fire & Casualty Co., 325 So.2d 795 (La.1975) the courts refused to draw a distinction between surplus line carriers and admitted carriers; consequently, Enterprise contends that this court should do the same.
In rejecting the appellant’s argument that La.R.S. 22:1406(F) applied to surplus line carriers, the trial court, in its reasons for granting judgment in favor of General Star stated:
Clearly R.S. 22:1406 F does not extend collision coverage for rental vehicles to surplus line insurance contracts. The word “authorized” obviously refers only to insurers admitted in Louisiana. Part XXVII of the insurance code regulates surplus line insurers. It refers throughout to “authorized” and “unauthorized” insurers. See in particular R.S. 22:1257.
Veal and Gray were cases where general insurance laws (uninsured motorist and financial responsibility) were applied to surplus line contracts for policy reasons. Here the very section extending collision coverage limits such extension to contracts written by “authorized” insurers.
We agree with the trial court that Veal v. Interstate Fire & Cas. Co., and Gray & Co. v. Stiles are distinguishable from the instant case.
In Gray & Co. v. Stiles, 221 So.2d 832, the court was confronted with the question of whether the Administrator of the Financial Responsibility Division of the Louisiana Department of Public Safety could refuse to accept surplus line policies as evidence of financial responsibility. The Administrator had refused to accept such policies based on its reading of La.R.S. 32:872(C) which read as follows:
‘No such policy or bond shall be effective under this Section unless issued by an insurance company or surety | .^company authorized to do business in the State of Louisiana * * *.’ (emphasis added)
The Administrator argued the words “authorized to do business” in this provision was synonymous with the term “authorized” as applied to insurance companies which qualify under Title 22. Since surplus fine companies are “unauthorized companies” under La.R.S. 22:1251, the Administrator reasoned that the policies were not acceptable.
The Court however, reasoned that the surplus line insurers were doing business in the State, and that they were doing so under the authority of law. The Court further gave the following reasons for finding that these unauthorized insurers were in fact authorized to do business within the meaning of the statute:
... The question presented here is whether the word ‘authorized’, as used in the Safety Responsibility Law refers to those companies to which the State has issued certificates of authority, or includes all companies permitted by law to do business in the State.
The purpose of the Motor Vehicle Safety Responsibility Law, as revealed by the title of Act 52 of 1952, is ‘to eliminate the reckless and irresponsible driver from the highways, and to provide for the giving of security and proof of financial responsibility by owners and operators of motor vehicles * * *.’ ...
The protection afforded the public by a surplus line policy is just as great as that afforded by a policy issued by an authorized company. The legislature intended that such policies stand on an equal footing with those issued by an authorized company. R.S. 22:1259, supra. If the word ‘authorized’ as used in the Safety
*1300 Responsibility Law is used in the same sense as in the Insurance Code, then R.S. 22:1259 is meaningless. We do not think that the legislature intended this result, nor do we believe they intended to penalize those who try to comply with the law by obtaining surplus line insurance, when no other insurance is available to them.
Surplus line insurance can be purchased only by those who are unable to secure insurance from ‘authorized’ companies. If these policies are not acceptable as proof of financial responsibility, there is no way in which such people can protect themselves against the coercive provisions of the Safety Responsibility Law 16⅛ advance of an accident. In addition to the payment of insurance permiums (sic), they are faced, in the eventuality of an accident, with the necessity of posting a bond or cash security if they are to retain their driving privileges, (emphasis added)
Gray & Co. v. Stiles, 221 So.2d at 833-834.
The Court then concluded that the better interpretation was one that harmonized the two sections rather than finding them repugnant and which did not place buyers of surplus fine policies in a class with those who were uninsured. Thus the Court concluded that surplus line companies were authorized to do business in Louisiana within the meaning of La.R.S. 38:872(C).
Although Gray & Co. v. Stiles has not been expressly overruled, our review of subsequent enactments of the Louisiana Legislature leads us to believe that the Legislature unquestionably does not consider policies issued by surplus line insurers as policies issued by companies “authorized to do business in Louisiana” for all purposes. More specifically, we note that in 1972 the Legislature amended La.R.S. 22:1258. Prior to 1972, section 1258, as enacted when the Legislature passed Act 125 of the 1958 Regular Session merely provided:
Section 1258 — ENDORSEMENT OF CONTRACT
Every insurance contract procured and delivered as a surplus line coverage pursuant to this Part shall have stamped upon it and be initialed by or bear the name of the surplus line broker who procured it, the following:
“This contract is registered and delivered as a surplus line coverage under the insurance code of the State of Louisiana enacted in nineteen hundred and forty-eight.”
However, La.R.S. 22:1258, as amended by Acts 1972, No. 241, § 1 now provides:
§ 1258. Endorsement of contract
Every insurance contract procured and delivered as a surplus line coverage pursuant to this part shall have stamped upon it and be countersigned by the surplus line broker who procured it, the following:
NNOTICE
This insurance policy is delivered as a surplus line coverage under the insurance code of the State of Louisiana.
This contract of insurance is not issued by a company authorized to do business in Louisiana. In the event of insolvency of the company issuing this contract, the policyholder or claimant is not covered by the Louisiana Insurance Guaranty Association which guarantees only specific policies issued by an insurance company authorized to do business in Louisiana. (emphasis added)
If in fact, it was the intent of the Legislature to treat surplus line insurers as insurers authorized to do business in this state, no need would have existed to require the printing of this notice on surplus line insurance policies.[1] By rewriting this section to specifically require surplus line insurers to advise *1301 the insured that the policy of insurance is not issued by a company authorized to do business in Louisiana, the Legislature rebuts any notion that such companies are “authorized to do business in this state.”
Moreover, the language in the latter part of section 1258 undermines appellant’s contention that La.R.S. 22:1259 mandates that unauthorized insurers must provide the exact same coverage as authorized insurers. It also undermines the language in Gray & Co. v. Stiles suggesting that the protection afforded the public by a surplus line policy is just as great as that afforded by a policy issued by an authorized company. La.R.S. 22:1258 clearly states that in the event of insolvency of a company issuing surplus line coverage, the policyholder or claimant is not covered by the Louisiana Insurance Guaranty Association because [gthis agency only guarantees specific policies issued by insurance companies authorized to do business in Louisiana. Enactment of the 1972 amendment to section 1258 raises serious questions as to whether the rationale advanced in Gray & Co. v. Stiles is still viable.
Nor are we convinced that the holding in Veal v. Interstate Fire & Cas. Co., 325 So.2d 795 (La.1975) controls this case. In Veal v. Interstate Fire & Cas. Co., the Supreme Court considered the question of whether the mandatory requirement of 22:1406(D)(1) requiring UM coverage applied to policies issued by “unauthorized” insurers. The court premised its holding that the requirement applied to unauthorized insurers “upon the broad and unambiguous language of Section 1406(D) which specifically provided:
... No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, ... (emphasis added)
The court found that this section expressly provides that all policies issued for delivery in Louisiana must afford uninsured-motorist coverage (unless such is waived). The court opined that it could not find any intent to exempt from this requirement policies issued through Louisiana-licensed brokers for coverage of Louisiana-based automobiles and Louisiana policy holders.
Unlike the language of La.R.S. 22:1406(D) the language of La.R.S. 22:1406(F) is not broad; rather, it specifically states that it applies to insurance companies authorized to write insurance. Had the Legislature intended for the provisions of La.R.S. 22:1406(F) to apply to all insurers who provide insurance coverage for Louisiana residents, it would not have used such limiting language, particularly in view of the extensive differences made in the two types of insurers 13in La.R.S. 22:1251 et seq. Instead, the Legislature most likely would have used the same broad, all-encompassing language previously used in La.R.S. 22:1406(D).
La.R.S. 22:1406(F) applies to insurers authorized to write insurance, i.e. authorized insurers. Surplus line insurers are not authorized to write insurance in the State of Louisiana. Instead, pursuant to La.R.S. 22:1257 persons who are unable to procure insurance from authorized insurers are allowed to procure surplus line insurance from unauthorized insurers through a licensed surplus line broker.
Moreover, this court cannot think of any policy reasons for finding that La.R.S. 22:1406(F) must be read to require that unauthorized insurers providing surplus line insurance are automatically required to provide collision coverage for rental vehicles.
Additionally, we find no merit to appellant’s contention that the only way to reconcile the provisions of La.R.S. 22:1406(F) with the provisions of La.R.S. 22:2091.1 is to interpret the provisions of the former statute to apply to surplus line insurers. We find no conflict between the two statutes. La.R.S. *1302 22:2091.5 B(5) requires lessors of rental motor vehicles to comply with the following notice requirement when renting a motor vehicle to a consumer:
The contractual provision containing the collision damage waiver shall display the following notice on its face, in boldface type and in no smaller print that (sic) ten point type. The notice shall be explained to the consumer by the lessor and signed and dated by the lessee prior to the consummation of the contract. If the provision is not contained in the contract, then the provision shall be attached to the contract and shall be considered a part thereof.
“NOTICE: IF YOU HAVE COLLISION COVERAGE UNDER YOUR OWN AUTOMOBILE INSURANCE POLICY WRITTEN IN LOUISIANA YOUR COLLISION COVERAGE AUTOMATICALLY hpEXTENDS TO RENTAL MOTOR VEHICLES PURSUANT TO R.S. 22:1406(F).
EVEN IF YOU ARE NOT A LOUISIANA INSURED, THE PURCHASE OF COLLISION DAMAGE WAIVER IS NOT MANDATORY AND MAY BE WAIVED. THIS CONTRACT OFFERS, FOR AN ADDITIONAL CHARGE, A COLLISION DAMAGE WAIVER TO COVER YOUR RESPONSIBILITY FOR DAMAGE TO THE VEHICLE. BEFORE DECIDING WHETHER TO PURCHASE THE COLLISION DAMAGE WAIVER, YOU MAY WISH TO DETERMINE WHETHER YOUR OWN AUTOMOBILE INSURANCE AFFORDS YOU COVERAGE FOR DAMAGE TO THE RENTAL VEHICLE AND THE AMOUNT OF THE DEDUCTIBLE UNDER SUCH COVERAGE, (emphasis added)
Surplus line insurance is not automobile insurance written in Louisiana. It is simply insurance written by foreign insurers that can be obtained by Louisiana residents through surplus line carriers licensed in Louisiana. Thus, the provisions of the above cited statute do not conflict with the provisions of La.R.S. 22:1406(F). Buyers of surplus line insurance are well aware of the fact that they do not have an insurance policy written in Louisiana. Consequently, the notice adequately places buyers of surplus line insurance upon notice that they must examine their policies to ascertain whether coverage for damage to rental vehicles is provided by the terms of their policies.
The trial court did not err when it found that La.R.S. 22:1406(F) does not extend collision coverage for rental vehicles to surplus line insurance contracts. Consequently, the court was correct when it granted General Star’s motion for summary judgment and dismissed Enterprise’s claims. Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.

BARRY, J., concurs with reasons.

. Significantly this notice does not appear on the policy contained in the record. Whether the policy is a renewal policy not requiring such a notice or whether the policy meets the requirements for being treated as a policy issued by a surplus line insurer need not be addressed by this court since all parties to the litigation stipu *1301 lated that General Star was a surplus line insurer.